IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| KATHRYN LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:14-cv-05001-NKL |
| | ) | |
| CAROLYN W. COLVIN | ) | |
| ACTING COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

The Commissioner of Social Security's decision regarding Plaintiff Kathryn Lewis' appeal of the Commissioner's final decision denying her application for disability insurance benefits is affirmed.

**I.  Background**

**A.  Lewis' Medical History**

Lewis alleges disabilities beginning on May 19, 2009.  Lewis has a long history of chiropractic treatment for back pain.  She also suffers from arthritis and periodic psychological impairments.  Lewis received regular chiropractic treatment for her back pain from Lance Ford, D.C. from 2004 until 2007.  In August 2006, Dr. Paul Toma evaluated Lewis in conjunction with her request for Social Security benefits.  Dr. Toma diagnosed a history of arthritis and noted that she had tenderness in her lumbar spine; he then concluded that Lewis would qualify for medium work.  That same month, Robert Whitten, Ph.D., performed a consultative exam of Lewis' psychological condition.  Dr.

Whitten noted that Lewis had serious impairment in oral memory and concentration and diagnosed her with possible ADHD, possible dementia, possible pain disorder, adjustment disorder, and personality disorder. He concluded that she was unable to store information in her short term memory to perform simple jobs.

From 2007-2009, Lewis received treatment at Access Family Care for back, neck, and hip pain, as well as arm and hand numbness. She was diagnosed with chronic neck and back pain. Imaging of her spine taken in March 2008 showed cervical hyperlordosis.

In February 2009, David Ball, D.O., performed a consultative examination of Lewis. He found that she had restricted motion of her cervical exam and a loss of normal cervical lordosis; an MRI showed that Lewis had a number of issues with her spine. Dr. Ball concluded that Lewis may be capable of secretarial work.

In April and June 2009, Lewis saw a vocational expert, Linda Wilks, to discuss her training and employment capabilities. Tr. at 578, 594. Ms. Wilks concluded Lewis' health precluded her from working full time, but that she would be an appropriate candidate for a job placement service and part-time employment. Tr. at 595.

Since May 2009, Lewis has continued to receive chiropractic treatment for low back pain, neck pain, shoulder pain, headaches. Tr. at 619. She has also been treated for fibromyalgia with prescription drugs. Tr. at 20. Finally, Lewis has adopted a regimen of herbal remedies and over the counter medications for pain management. Tr. at 44-45.

**B. Procedural History**

Since 2006, Lewis has made two requests for disability insurance benefits.

Lewis first requested benefits for disabilities beginning on March 1, 2006 ("the first action"). In the first action, the Administrative Law Judge ("ALJ") found Lewis had severe impairments including mild degenerative disc disease of the lumbar and thoracic spines. Tr. at 108. In evaluating Lewis' claim, the ALJ reviewed the opinions of Lewis' doctors including Drs. Whitten, Toma, and Ball. The ALJ stated that he relied on the opinions provided by Drs. Toma and Ball, and accorded little weight to Dr. Whitten's conclusions. Tr. at 91-99. On May 18, 2009, the ALJ denied Lewis' request for benefits in the first action. *Id.* Lewis did not appeal the ALJ's denial.

In August 2009, Lewis initiated a new request for disability benefits for disabilities beginning on May 19, 2009 ("the current action"). In the current action, Lewis alleges disabilities arising out of the following severe impairments: degenerative joint disease and degenerative disc disease of the thoracic and lumbar spine, fibromyalgia, and moderate bilateral high frequency sensorineural hearing loss. Tr. at 16. She argues that these impairments are worsened by depression. Doc 8, p. 18-19.

**C. Hearing Testimony and ALJ Decision**

In August 2012, the ALJ held a hearing regarding the current action. Lewis testified that she has constant back pain which is exacerbated by sitting for more than one or two hours. She also testified to being able to stand for fifteen to twenty minutes and lift fifteen pounds. Her pain purportedly restricts her ability to bend, reach overhead, reach in front of herself, and move her neck. She testified that she has hearing loss and arthritis that makes it difficult for her to use a telephone and type. Lewis stated that she

3

chronically worries about things, gets confused, is depressed, and has trouble concentrating with her pain.

The ALJ issued an unfavorable decision on September 7, 2012. He found that Lewis suffered from severe impairments including degenerative joint disease and degenerative disc disease of the thoracic and lumbar spine, fibromyalgia and moderate bilateral high frequency sensorineural hearing loss. He concluded that Lewis had the residual functional capacity ("RFC"):

> to perform light work . . . in that she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours out of an 8-hour workday with normal breaks; sit for 6 hours out of an 8-hour workday with normal breaks; and push and pull to the same weight restrictions. The claimant can occasionally climb, balance, stoop, kneel, crouch and crawl. She should avoid work environments that require exposure to loud background noise, or communication at a loud volume.

Relying on vocational expert testimony, the ALJ concluded that Lewis could perform her past relevant work as a data entry clerk, tax preparer, or receptionist.

## II. Standard

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla"

of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. Discussion

Lewis contends the ALJ's decision to deny Lewis disability benefits is flawed because he failed to properly weigh the evidence in the record and create a bridge between that evidence and Lewis's RFC.

### A. ALJ's Discussion of the Record

Lewis contends that the ALJ erred in failing to reference Dr. Whitten's opinion in his decision and failing to assign Drs. Toma and Ball's opinions specific weight. Drs. Whitten and Toma evaluated Lewis in 2006. Dr. Ball evaluated Lewis in February 2009.

The ALJ's discussion of the doctors' opinions in the current action must be analyzed in conjunction with the weight assigned to the opinions by the ALJ in the first action. An ALJ's decision in the first action that Lewis was not disabled constitutes a final and binding decision. 20 C.F.R. § 404.955. Therefore, collateral estoppel barred the ALJ in Lewis' second action from reweighing the opinions evaluated in the prior proceeding.[1] 20 C.F.R. § 404.950(f); *Gavin v. Heckler*, 811 F.2d 1195, 1200 (8th Cir. 1987).

The ALJ's decision in the first action noted, "The [ALJ] gives little weight to the opinion of Dr. Whitten . . . as the doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically

---

[1] This is not to say that the doctors' opinions are irrelevant to the ALJ's decision in the current action. However, the ALJ is precluded from reevaluating the specific weight assigned to each evaluation in light of the prior unappealed final judgment.

accept as true most, if not all, of what the claimant reported." Tr. at 98. It then afforded "great weight" to the opinions of Drs. Ball and Toma. The ALJ's assessment of the credibility of the doctors' opinions in the first action could not be reassessed by the ALJ in the current action. Due to the ALJ's assignment of "little weight" to Dr. Whitten's opinion in the first action it was unnecessary for the ALJ in the current action to discuss[2] or re-weigh his opinion. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."). Lewis also takes issue with the ALJ's reliance on the opinions of Drs. Ball and Toma[3]; however, this reliance is consistent with the ALJ's assignment of great weight to the opinions in the first action.

Lewis also criticizes the ALJ's reliance on Dr. Ball's evaluation because the ALJ did not have Dr. Ball or another physician reevaluate Lewis' condition based on the results of a subsequent MRI. However, the content of both MRIs was substantially similar. Thus, the ALJ was not required to have the second MRI evaluated by another consulting physician. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("Although

---

[2] Discussion was not necessary at all because the ALJ's rejection of the opinion in the first action was based on the ALJ's conclusion that the opinion merely restated Lewis' self-diagnosis and did not contain substantive medical conclusions that would be relevant to her current condition.

[3] Lewis also criticizes the ALJ's reliance on Dr. Toma's opinion based on the contention that as the opinion was rendered in 2006 it is "outdated." This argument applies equally to Dr. Whitten's opinion, which was rendered mere weeks after Dr. Toma's opinion. Therefore, if Dr. Toma's evaluation should have been disregarded, Dr. Whitten's evaluation should have been similarly disregarded. As Dr. Toma's opinion is consistent with the bulk of Lewis' medical records since 2009, any inappropriate reliance on the opinion in the ALJ's decision is harmless error. Any erroneous reliance on Dr. Whitten's opinion would not have been harmless due to the ALJ's rejection of the opinion in the first action and the inconsistency of Dr. Whitten's opinion with the rest of the record.

[the duty to fully develop the record] may include re-contacting a treating physician for clarification of an opinion, that duty arises only if a crucial issue is undeveloped.").

Lewis next argues the ALJ also erred in failing to discuss Wilks' opinion regarding Lewis' vocational capacity. However, Wilks' opinion that Lewis could not "independently obtain and maintain employment" constitutes an opinion on the ultimate issue of disability, a determination that must be made by the ALJ. *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) (an opinion that a plaintiff "is disabled or cannot be gainfully employed . . . invades the province of the Commissioner to make the ultimate disability determination"). Therefore, the ALJ had no obligation to defer to Wilks' conclusion in evaluating Lewis' RFC.

Additionally, Wilks' opinion was based on little more than her discussion with Lewis and is inconsistent with the record as a whole.[4] For example, at the time of Wilks' meetings with Lewis, Lewis was actively seeking employment and maintained a part-time job cleaning four homes. In light of the rest of the evidence in the record, which supports the ALJ's conclusion that Lewis is capable of working, the ALJ's failure to discuss Wilks' opinion is not grounds for remand. *See Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008) ("As a general rule, . . . an ALJ's failure to adequately explain his factual findings is not a sufficient reason for setting aside an administrative finding where the record supports the overall determination.").

---

[4] This case is distinguishable from the case presented in *Frankl v. Shalala*, where the opinion of the occupational therapist was consistent with the record as a whole, including the conclusions of the plaintiff's doctors. 47 F.3d 935, 939 (1995).

7

## B. Sufficiency of the ALJ's Determination of Lewis' RFC

Lewis contends that the ALJ failed to provide a specific bridge between the ALJ's assessed RFC and the medical evidence. Lewis argues that the ALJ's reliance on non-treating, non-examining physician opinions, failure to find that Lewis has a severe mental health impairment, and failure to account for Lewis' fibromyalgia in the RFC necessitate remand.

The RFC represents the most a claimant is capable of despite the combination of her limitations. 20 CFR §§ 404.155(a)(1), 416.945(a)(1). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. . . . Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (quotation and citation omitted).

To determine Lewis' RFC, the ALJ evaluated Lewis' credibility and considered the entirety of the record. He then concluded that Lewis' RFC is as follows:

> to perform light work . . . in that she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours out of an 8-hour workday with normal breaks; sit for 6 hours out of an 8-hour workday with normal breaks; and push and pull to the same weight restrictions. The claimant can occasionally climb, balance, stoop, kneel, crouch and crawl. She should avoid work environments that require exposure to loud background noise, or communication at a loud volume.

The record contains substantial evidence, including medical evidence, to support the ALJ's conclusions regarding Lewis' RFC.

The ALJ first found that Lewis' subjective complaints about the extent of her symptoms were not credible. In formulating his conclusion, the ALJ noted Lewis' treatment history for her lumbar spine, arthritis, fibromyalgia, and hearing impairments. Tr. at 20-21. As previously discussed, Lewis' course of treatment has been extremely mild, consisting largely of over the counter pain relievers, chiropractic visits, and auditory enhancements. The record indicates that these treatments have been successful in managing much of Lewis' pain. *See Boertje v. Astrue*, 848 F.Supp. 2d 952, 960 (S.D. Iowa 2010).

Lewis contends that the ALJ erred in relying on the opinions of non-treating, non-examining physicians in determining her RFC, but does not point to any evidence in the record that suggests that Lewis' RFC is more limited than that set out by the ALJ, other than Dr. Whitten's opinion from 2006 that was disregarded by the ALJ in the first action. Lewis had the burden to prove her RFC. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). Lewis has presented no evidence that the ALJ's conclusions regarding her RFC were not supported by substantial evidence on the record.

Additionally, the opinions relied on by the ALJ provide a clear bridge between the substance of the RFC and the medical records. Dr. Toma concluded that Lewis was capable of medium work. Dr. Ball concluded that Lewis could perform secretarial work. The ALJ's conclusion that Lewis can perform "light work" is consistent with these opinions. Lewis contends that the ALJ erred in failing to incorporate limitations into the

9

RFC based on her fibromyalgia. The RFC states, however, that Lewis can only "occasionally climb, balance, stoop, kneel, crouch and crawl," is limited to "light work," and "should avoid work environments that require exposure to loud background noise." These limitations all relate to Lewis' fibromyalgia. Given the ALJ's thorough discussion of the medical evidence in the case and the clear relationship between the medical evidence and the RFC, the bridge between the RFC and the medical evidence is sufficient.

Lewis finally contends that the ALJ erred in failing to include limitations in her RFC based on her mental impairments. However, nothing in the record outside of Dr. Whitten's opinion supports the conclusion that Lewis has a sufficiently severe mental impairment that it would affect her ability to work.[5]

## IV. Conclusion

There is substantial evidence on the record as a whole to support the ALJ's decision. The Commissioner's final decision is affirmed.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: October 24, 2014
Jefferson City, Missouri

---

[5] Lewis contends that ambiguity in a doctor's note indicates she suffers from depression. However, the presence of an ambiguous note, reading, "no depression, anxiety, or agitation, very anxious," is not substantial evidence that Lewis suffers from medically diagnosed depression that would exacerbate her other impairments, particularly in light of the absence of other evidence of clinical depression. Tr. at 644.